| | | |
|---|---|---|
| AOC-S-105   Sum Code: CI<br>Rev. 7-99<br><br>**Commonwealth of Kentucky**<br>**Court of Justice**<br>CR 4.02; Cr Official Form 1 | <br>**Civil Summons** | Case Number **16-CI-00443**<br>Court **CI**<br>County **MCCRACKEN** |

Generated: 06/13/2016

*Plantiff*, CIMA, MARILYN   VS. MEDTRONIC, INC.,, *Defendant*

MEDTRONIC, INC.,
CT CORPORATION SYSTEM/REGISTERED AGENT
306 WEST MAIN STREET, SUITE 512
FRANKFORT            KY     40601

The Commonwealth of Kentucky to the above-named Defendant(s):

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with summons. Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days following the day this paper is delivered to you, judgement by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding such relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this summons.

Circuit/District Clerk, KIM CHANNELL

By _Shari Wufrd_____, DC

Date: 06/13/2016

**Proof of Service**

[ ] This Summons was served by delivering a true copy and the Complaint (or other initiating document)
     To: _____

[ ] Not Served because: _____

Date: _____, 2____.                  _____
                                                           Served by

CI   16-CI-00443
CIMA, MARILYN   VS. MEDTRONIC, INC.,



**EXHIBIT A**

COMMONWEALTH OF KENTUCKY
McCRACKEN CIRCUIT COURT
DIV NO. 1
Case No. 16-CI- 443



FILED
JUN 13 2016
MCCRACKEN CIRCUIT COURT
PADUCAH, KENTUCKY

MARILYN CIMA     PLAINTIFF

VS.

MEDTRONIC, INC.     DEFENDANT

    SERVE:    C T Corporation System
                   Registered Agent
                   306 West Main Street, Suite 512
                   Frankfort, KY 40601
                   By Certified Mail, Return Receipt Requested

## VERIFIED COMPLAINT

Comes now the Plaintiff, Marilyn Cima, by counsel, and for her Verified Complaint against the Defendant, Medtronic, Inc., states as follows:

## INTRODUCTION

The Plaintiff, Marilyn Cima seeks to recover damages from the Defendant, Medtronic, Inc. (hereinafter "Defendant" or "Medtronic") for intentional infliction of emotional distress, breach of contract, interference with a contract, and for punitive damages.

## JURISDICTION AND VENUE

1.     The Plaintiff is a resident and domiciliary of McCracken County with a primary residence at 280 Cascade Drive, Paducah, Kentucky 42003.

EXHIBIT A

2. The Defendant is a Minnesota corporation authorized to conduct business in the Commonwealth of Kentucky with its principal office located at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. The Defendant is a medical device and implant supplier and provider of technical support. The Defendant operates within several McCracken County hospitals including Lourdes and Baptist Health and provides advice and assistance to those hospitals using their devices. Medtronic also maintained a small office located in Paducah, Kentucky, but that office has since been closed. Summons should be issued as directed in the caption.

3. Jurisdiction and venue in this Court are appropriate because the events and actions stated in this Complaint occurred primarily in McCracken County and the parties are either residents or do business in this county. Furthermore the amount sought exceeds the jurisdictional threshold of the Court.

## BACKGROUND

4. The Plaintiff incorporates by reference all the above paragraphs, as if fully stated herein.

5. The Plaintiff was an employee of Medtronic for almost fifteen (15) years, beginning in October 18, 1999 and ending with her termination on September 17, 2014. The Plaintiff was hired as a clinical specialist and received a number of promotions to eventually become a principal clinical specialist. The Plaintiff also received outstanding reviews from her employer every year, including the year of her termination.

6. The Plaintiff as part of her duties traveled to various facilities in the Kentucky-Tennessee area, based on the staffing needs of Medtronic, but the primary facilities she worked

EXHIBIT A

at were Lourdes and Baptist Health in Paducah, the Murray-Calloway County Hospital in Murray, and the Jackson Purchase Medical Center in Mayfield.

7. The Plaintiff worked with a team of other Medtronic employees and did so successfully for many years, receiving positive evaluations from Medtronic. However in 2012, one her coworkers attempted suicide. This event changed the workload balance among the remaining employees and placed additional demands on the Plaintiff.

8. The entire office was required to adjust itself in order to help this employee recover and recuperate, including having the Plaintiff and other employees to take over a substantial portion this employee's duties. When this employee returned, he was not able to resume his duties fully, and the Plaintiff and the other employees continued to be required to compensate for his deficiencies. Neither the Plaintiff nor any of the other employees were permitted to confront the employee, for fear that he might attempt suicide for a second time. This situation was further exacerbated when another employee took an extended leave for surgery, which essentially left the Plaintiff in charge of her local office, having to perform the duties of those two employees in addition to her regular duties.

9. During this same period the Plaintiff was accused of fraternizing with one the doctors who Medtronic contracted with to use their devices. The Plaintiff previously had a relationship with this doctor before coming to work for Medtronic. Furthermore one or more her coworkers and/or supervisors were personally aware of this relationship. Indeed one or more of coworkers and/or supervisors also had personal relationships with some of the doctors or providers that Medtronic provided services to and had not disclosed any of these relationships to Medtronic.

EXHIBIT A

10. As a result of these accusations, the Plaintiff's supervisors and managers ordered her not to work at Baptist Health and avoid any contact with that doctor during business hours. However, the Plaintiff was also told that she was free to contact that doctor outside of business hours. The Plaintiff complied with her employer's instructions, but the restrictions created additional friction between the Plaintiff and her coworkers, because the other employees were forced to take on additional workload from Baptist Health, which was a major source of their case load. It also highly probable that some of her coworkers, the exact identity of which is presently unknown to the Plaintiff, made false reports to Medtronic in an attempt to harm her reputation with the company.

11. During the period of time when several of her coworkers were on leave, the Plaintiff's supervisors and managers made an exception to her work restrictions and allowed her to work at Baptist Health when she was the "on call" employee. This placed the Plaintiff in the awkward position of having to explain her long absence from Baptist Health and put her in a situation where she might have to interact with the doctor that her employer had forbid her from contacting. The additional stress caused by her extra workload and the possibility that she might violate her employer's admonition, finally became too much and the Plaintiff had a severe anxiety attack. In fact prior to this incident, the Plaintiff had contacted human resources to inform them that her physician was having difficulty balancing her medications and asked them to make note of this in her employee records.

12. On July 27, 2014 the Plaintiff drove herself to Vanderbilt Hospital's emergency room and was placed in their psych ward for a psychiatric evaluation. After a short time at the hospital, the Plaintiff contacted her supervisor to let her know about the situation. While at Vanderbilt, the Plaintiff entered a two week program and took leave under the Family Medical

EXHIBIT A

Leave Act to complete the program. After completing the program, the Plaintiff took an additional week of leave and then returned to work, with an appointment for continued treatment at a later date.

13. The Plaintiff did not have the opportunity to attend the follow-up appointment, because she had to cover for another employee. Her employer was aware of the appointment and the fact that she had missed it. The Plaintiff received no assistance or support from Medtronic or any of its employees, including those who worked in her office. The Plaintiff was then terminated a week after missing this psychiatric appointment and while still under her psychiatrist's supervision. The Plaintiff was not given a specific reason for her termination, other than being told of nebulous complaints from the hospitals where she worked.

14. Following her termination, the Plaintiff was asked to sign a severance agreement, which she did sign, but at the time she lacked the capacity to enter into a contractual agreement, because of the psychological conditions that she was still suffering from during the time that her employment ended. Indeed, the Plaintiff's supervisor was personally aware of the Plaintiff's situation as she went to Vanderbilt Hospital to meet with the Plaintiff, while she was there for psychiatric evaluation. Based on her recent psychological treatment, and the fact that she was still under psychiatric supervision, at the time she signed the agreement, Medtronic knew or should have known that the Plaintiff lacked the capacity to enter that agreement or any agreement.

15. As a result of the foregoing, the Plaintiff still suffers from depression and resulting consequences from depression for which she is presently receiving medical and psychiatric treatment.

**EXHIBIT A**

16. Following her termination, and after she contacted legal counsel, the Plaintiff made a request to speak with a Medtronic representative about the circumstances of her termination and to inform them about some issues with her coworkers that might have led to them being disciplined. The Plaintiff even offered at her own expense to travel to Medtronic's corporate headquarters to do this. The Plaintiff has never received a response from Medtronic on this issue.

17. The Plaintiff has also contacted Medtronic, through counsel regarding her severance package. After discovering that those funds had been directly deposited into her checking account, the Plaintiff refused those funds and then sent a check back to Medtronic in that amount. That check was never cashed and the Plaintiff has never received a response from Medtronic on this issue.

18. The most recent attempt to communicate with the Defendant, involved a request for a copy of the Plaintiff's entire employee file, which a prospective employer had requested from the Plaintiff. To date, the Plaintiff has never received a response from the Defendant as to this request.

19. At this point the Plaintiff has not received any communication of any kind from Medtronic in more than a year.

## COUNT I- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

20. The Plaintiff incorporates by reference all the above paragraphs, as if fully stated herein.

21. Medtronic by the acts and omissions of its agents and employees has caused substantial harm to the Plaintiff. Medtronic's failure to properly address the serious mental health concerns of one of its employees, failure to adequately supervise the conduct of its

EXHIBIT A

employees and agents, failure to provide the same level or substantially similar level of flexibility and cooperation to an employee suffering from mental health issues, and failure to provide the Plaintiff an opportunity to be heard have all caused substantial harm to the Plaintiff.

22.  Medtronic's conduct was so outrageous and outside the bounds of decency that it offends against the generally accepted standards of decency and morality and the shocks the conscience of an ordinary person.

23.  Through these reckless and intentional acts, Medtronic has caused the Plaintiff severe emotional distress including severe anxiety and severe and crippling depression, occurring on a consistent and persistent basis that will continue into the future.

24.  As a direct and proximate cause of Medtronic's actions, the Plaintiff has been injured in an amount exceeding the jurisdictional threshold of the Court, including compensatory damages for medical and psychiatric treatment, severe pain and suffering, humiliation, degradation, loss of enjoyment, and for severe emotional distress.

## COUNT II- BREACH OF CONTRACT

25.  The Plaintiff incorporates by reference all the above paragraphs, as if fully stated herein.

26.  In addition to her employment contract with Medtronic, the Plaintiff also had another contract with her employer, regarding the conditions that she would operate under in order for her to continue her employment. These additional requirements were first imposed on March 21, 2014, when they were emailed to the Plaintiff. These conditions were later reduced to writing dated April 22, 2014 with additions and revisions based on the Plaintiff's conversations with her supervisors. The contract required that she avoid any communication that would impact Medtronic's business, not handle cases as Baptist Health, except on call, to

**EXHIBIT A**

route any communication from Baptist Health to another Medtronic employee, summarize any interactions or conversations that she had with any customers or personal at Baptist Health, and to not do anything harmful to Medtronic's business or credibility with its customers. The contract also scheduled an employee evaluation of the Plaintiff, but that evaluation never took place.

27. The Plaintiff adhered to these conditions, and never violated the agreement. The closest she came to a violation occurred when she contacted one of the doctors after her severe anxiety attack on July 27, 2014, which resulted in psychiatric evaluation and Vanderbilt Hospital. The Plaintiff was off duty at that time, and was not of sound mind at the time she made the call.

28. Medtronic breached this agreement by terminating the Plaintiff, despite the Plaintiff's otherwise satisfactory job performance, and breached the contractual duty of good faith and fair dealing.

29. As a result of Medtronic's breach of contract, the Plaintiff has been damaged in an amount in excess of the jurisdictional threshold of the Court including damages for lost wages, and lost opportunity.

### COUNT III – INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

30. The Plaintiff incorporates by reference all the above paragraphs, as if fully stated herein.

31. Medtronic through conduct of its agents and employees has wrongfully, intentionally, and willfully interfered with the contractual relationship that the Plaintiff had with Medtronic.

**EXHIBIT A**

32. Through the numerous and ever-changing restrictions placed on the Plaintiff, Medtronic prevented the Plaintiff from completing her contractual obligations as an employee.

33. As a result of Medtronic's actions, the Plaintiff has been injured in an amount in excess of the jurisdictional threshold of the Court.

### COUNT IV – PUNITIVE DAMAGES

34. The Plaintiff incorporates by reference all the above paragraphs, as if fully stated herein.

35. Medtronic has acted with reckless and intentional disregard to the rights of the Plaintiff and with malice and oppression in its acts and omissions toward the Plaintiff, sufficient to justify the award of punitive damages.

**WHEREFORE**, the Plaintiff, Marilyn Cima, prays for the following relief:

A. A trial by jury on all counts of the Plaintiff's Complaint;

B. Judgment against the Defendant and in favor of the Plaintiff on all counts of the Plaintiff's Complaint;

C. That the Court award the Plaintiff her fees and costs including the award of a reasonable attorney's fee;

D. That service be issued as directed in the caption; and

E. For any and all other relief that the Plaintiff may be entitled.

**EXHIBIT A**

Respectfully Submitted,

_____
Dennis L. Null
Null, Samson & Paitsel
423 East Broadway/P.O. Box 5040
Mayfield, KY 42066
(270) 247-5737
Attorney for the Plaintiff

### VERIFICATION

The Plaintiff, Marilyn Cima, states under the penalty of perjury that she has read the foregoing Complaint and knows the contents thereof. That this Complaint was prepared with the assistance and advice of counsel and is true and accurate to the best of her knowledge and belief.

_____
Marilyn Cima

COMMONWEATH OF KENTUCKY
COUNTY OF GRAVES

Subscribed, sworn and affirmed before me by Marilyn Cima on this the 9th day of June, 2016.

_____
Notary Public, KY State-at-Large
My Comm. Exp: 12-11-17

Page 10 of 10

**EXHIBIT A**